Third case for argument today is Pettis v. United States. Mr. Hall. May it please the Court. John Hall for Appellant Kevin Pettis. Ex parte communications are inconsistent with our adversarial process, risk advantaging one party, and create an appearance of impropriety and unfairness. Yet from the moment of taking the bench in 2013 until his misconduct was unearthed, Judge Colin Bruce extensively communicated with the government outside the presence of defense counsel. I don't understand how this is properly presented. The only reason that Pettis is in custody is the revocation of his supervised release. That could have been appealed, right? It wasn't, I take it. It was not. So the argument you're now making on collateral review is an argument that was available on direct appeal and bypassed. Why isn't that the end? Your Honor, the argument that we are making, particularly the section 455A claim, was not available on direct review. No, I'm referring to direct appeal from the revocation of supervised release, right? The supervised release was revoked long after these ex parte communications became public. Why wasn't the issue raised then? Now, of course, you weren't his lawyer then. So I can't really cross-examine you about that. But I can ask the question why somebody who chose not to raise a particular issue on direct appeal, when that issue was fully available, can raise it on collateral attack? I believe, Your Honor, the issue that could have been appealed from the revocation of supervised release was only issues related to the revocation of supervised release. Mr. Pettis is challenging now. Yes. Why couldn't that have been raised on appeal from the revocation of supervised release? I don't think it would have been the proper vehicle to do so because what Mr. Why? Because Is there some legal doctrine that prevented it? Your Honor, I would None that I'm aware of. But if you're aware of one, please tell me. Well, I'm happy to submit a supplemental briefing. No, if we think further filings are necessary, we will let you know. But I don't know of any such doctrine, and apparently you don't either. That's my It's a problem getting this appeal underway. I hope you can see the difficulty. Your Honor, I would say that the issues that could have been appealed from the revocation of supervised release would have been limited to the judgment there, which was the revocation What doctrine so limits them? Your Honor, I mean, I would say it would be 1291, which this court can only take appeals from judgments and the judgment underlying the judgment of revoking supervised release. Yes. Depends on the validity of the supervised release order. Can always be challenged. We're not attacking the validity of the supervised release order. Yes, you are. You are challenging the validity of this man's criminal conviction, which includes his supervised release order. It's no different from challenging the validity of a criminal convict. Sorry, of an imprisonment sentence. This is an imprisonment sentence. I would draw a distinction. I know you're not prepared to discuss this, but I hope you see why it's a problem. Yes, Your Honor. But just to clarify, what we are seeking is resentencing, not challenging the actual conviction. And we are seeking resentencing. You can't get resentencing after the time in prison has been served. All you could get is an order lifting the supervised release. But the supervised release has been revoked. I still don't think you're even seeing the problem. Your Honor. The supervised release, put it differently. The only custody in which your client is, is the time in prison on revocation of supervised release. The custody is the key to a review under 2255. But that custody was reviewable by appeal, and appeal was bypassed. Of course, Your Honor. But, again, we would say, and I was not the lawyer for Mr. Hedges. I know, I know. I can't blame you for decisions made by somebody else. But we would say that that attorney could only have appealed the supervised release judgment. And I appreciate your point. But I would respectfully recharacterize and say that we can challenge the imposition of a sentence of supervised release, which is what happened here. And I'd like to begin a little bit with the moodness. And this case remains alive because the government has not met its heavy burden of showing it is impossible for Mr. Pettis to earn judicial relief. If Mr. Pettis prevails, he will be resentenced. There, he will receive a shorter period of supervised release, or none at all. He cannot possibly get a longer sentence. Did Judge Bruce handle the supervised release revocation hearing? No, Your Honor. Judge Darrow did. Judge Darrow did. And any term of supervised release unlawfully served would be credited against his current term, resulting in a shorter period. The possibility that Mr. Pettis will receive a shorter period of supervised release keeps this appeal live because, as this court noted, a defendant is entitled to have the district judge impose a sentence under the correct legal rules if any potential benefit could arise from the difference. And the case does not moot unless this court is confident the defendant cannot benefit from success on appeal. My opponent argues that Mr. Pettis completed his original sentence and that Judge Darrow's punishment for the violation of supervised release moots his claims because the sentence is supposedly distinct. But the Supreme Court has flatly rejected that argument. In both Johnson and Haymond, the court explained that supervised release punishments are part of the penalty for the initial offense. While practically Judge Darrow imposed a punishment that had the effect of extending Mr. Pettis' period of custody, when a defendant is penalized for violating the terms of a supervised release, the Supreme Court has said that what the district court is really doing legally is adjusting the defendant's sentence for his original crime. On the issue of equitable tolling, Mr. Pettis timely filed this habeas petition. There is no real dispute that he diligently pursued his rights by quickly seeking assistance from the court after Judge Bruce's misconduct came to light and quickly filing his petition after Mr. Patton, the federal defender, informed him that the tolling agreement did not cover the most meritorious claim. And two independent extraordinary circumstances prevented Mr. Pettis from timely filing his petition. First, Mr. Patton affirmatively misrepresented that he had How does that get beyond negligence? I guess the mistake being the suggestion by his counsel that this has been told and the lawyer was wrong. And Mr. Pettis followed that advice. Two points, Your Honor. There are two independent extraordinary circumstances. I believe you're referring to the second one, the serious substance of error. But I'd like to focus briefly on the first one, which is he made an affirmative factual misrepresentation. I think it would be more helpful for me with the limited time that you have to address the second problem. Of course. And how do we get beyond that? Of course. So the serious substance of error was he did not include the most meritorious claim, which this court has noted provides a much broader relief than the due process clause would. May I reserve the remainder of my time for rebuttal? Certainly, counsel. Thank you. Mr. Miller. May it please the court, counsel. The United States submits that this appeal at this point is moot and therefore asks this court. How can it be moot when Pettis is still in custody? As Spencer said, the question, that's one question. The next question, is there the case for controversy and can this court issue some remedy that will. We can issue a writ requiring him to be released from that custody. So how can it be moot? Well, we believe that the writ that the court is talking about would be to just terminate his supervised release. He's not in. The federal court can order a man in custody to be released from that custody. I understand your argument that we should not do that, but that is unrelated to mootness. I think you should proceed to the merits. Well, I will do that, Your Honor, but I know when you say in custody, the defendant is released from custody. He is currently now serving a term of supervised release. I am well aware of that, counsel. Very good. Well, moving on past mootness, Your Honor, in this case, first to address the issue raised by the defense on equitable tolling. Obviously, this court would have to find an abuse of discretion by Judge Darrow in determining whether that equitable remedy applied. And in this case, as the government has noted in this brief, this was simply an error by defense counsel in not raising the issue that ultimately turned out to be the most meritorious for the defendant, the appearance of bias issue, while the defendant was pursuing the actual bias issue. And at the time that the defendant was pursuing that, though, I would note in counsel, this court had not ruled in Atwood yet. So the district court and the 2255s and the tolling was all based on actual bias or presumptive bias by Judge Bruce. It was only then, much later after Atwood was decided, that defense counsel and the defendant realized that the appearance of bias issue might have more traction than the actual bias issue. But by that time, the one-year period for filing that issue had expired. Judge Darrow examined the argument for equitable tolling, and we would argue did not abuse her discretion in looking at all the facts of the case and determining this was a simple case of negligence by the defendant and the defendant's attorney, and therefore equitable tolling did not apply. The defendant also could address, the court wants us to address on the merits, the issue of harmlessness in this case. Under the Lillieberg factors, the question on harmlessness has several factors, and as we lay out in our brief, we believe this case is much closer to the Williams case where this court found no, found that it was harmless there and did not need to be remanded versus the Atwood case where this court found that it should be remanded. And one of the things that I think is important to note in these cases is that this case, Mr. Pettis' case, is one in a long line of cases that the Seventh Circuit has now addressed regarding these issues with Judge Bruce, and that the U.S. Attorney's Office has dealt with dozens of these cases. And so the court has decided Orr and Atwood and Williams and Shannon. So those factors such as preventing injustice in future cases or undermining public confidence don't apply the weight now in the Pettis case as they applied in the Atwood case. They are more like the Williams case, and ultimately in the unfairness to the parties. But counsel, we still have a sentencing where the judge exercises tremendous discretion, and isn't that something we've looked at previously? Absolutely. The discretion the judge exercised in this case, though, is not on point with Atwood. Atwood, one of the concerns of this court was that the guidelines were 188, I believe it was 235 months, and Judge Bruce imposed a sentence of 210 months above the bottom of the guideline sentence. In this case, the defendant went to trial, was convicted, actually at the time was an armchair criminal. By the time of sentencing, under the categorical approach, no longer was an armchair criminal, but still faced guidelines 140 to 175 months, if not for the 10-year statutory cap. So in this case, Judge Bruce imposed a guideline sentence, which was the 120-month sentence because of the statutory cap. So yes, discretion exercised, but less discretion. But more importantly, in harmlessness, that sentence has been entirely served. There's no remedy this court can give at this time that will lessen the amount of time he served in custody. In fact, he served an additional 18 months because only a few months into his supervised release, he violated by possession and controlled substance in resisting a peace officer. That went to Judge Darrow, who then revoked him and gave him additional time in prison, which he served. The defendant revoked his supervised release. He was not revoked. Revoked his supervised release. Correct. Correct, Your Honor. So for those reasons, as we say in our brief, we believe that there's harmless error regarding any 455A violation in this case. If there's any other specific questions that the court has regarding the appeal, otherwise we would ask the court to affirm the judgment of Judge Darrow. Mm-hmm. Thank you, Counsel. Thank you. Anything further, Mr. Hull? Briefly, Your Honor. I'd like to address harmless error quickly. As noted, the government does not dispute that by presiding over the sentencing of Mr. Pettis, Judge Booth violated section 455A. It only disputes that the error was harmful. Like in Atwood, though, the same application of the Liljesburg factors demonstrates that the error harmed Mr. Pettis. As Judge Kohler noted, the risk of injustice to Mr. Pettis is clear. The wide open discretion Judge Bruce enjoyed at sentencing invited the risk that his personal biases influenced or appeared to influence the sentence. And resentencing would impose little more than an administrative cost on the government. In addition, the risk of injustice to other parties remains, in the words of Atwood, the need to encourage judges to exercise caution in their communications. And finally, the public's confidence in the impartiality of the judiciary is still paramount. When those qualities appear to be compromised, the public has little reason to trust the integrity of the resulting sentence. We respectfully ask that this court reverse and remand for resentencing. Thank you. Thank you, Mr. Hull. Mr. Hull, we appreciate your willingness and that of your law firm to accept the appointment in this case and your assistance to the court as well as your client. The case is taken under advisement.